and her family who are here in court today. I intend to reserve a minute-and-a-half of rebuttal time, and I will do my best to follow the clock. Petitioners challenged the admission of the prejudicial asylum officer credibility findings and the adverse credibility finding of the immigration judge that were both upheld by the Board of Immigration Appeals. First of all, I'd like to say that these issues are both appropriately before this Court because they were raised before the BIA and actually addressed and decided by the Board of Immigration Appeals. So Petitioner raised both issues in the Notice of Appeal and the BIA Appeal Brief. That is, she argued that the asylum officer credibility assessment, which National Immigration Court policy says should not be admitted to in the inner hearing. And secondly, that was raised in the BIA Brief, that that document should not have been admitted. Ginsburg. Let me ask you something. Assuming that the BIA did not construe its statute or the regulation properly, what is the – what was the prejudice from admitting the document that she had anyway? I mean, she got it through her FOI request and that was available for cross-examination. So the document would have been available for impeachment, but only, I would argue, the testimony that she made before the asylum officer, not the second page of the assessment to refer, which was this detailed credibility determination, negative credibility determination of the asylum officer. The I.J. said he or she wasn't considering. So the I.J. said that he was not going to consider that, but in fact, that was brought out and questioned during the hearing both by the government trial attorney and by the immigration judge. So the credibility assessment itself said, if I can just answer, said that her testimony was illogical and inconsistent to describe the fact that she simply mixed up the birthdate of her son, which was coincided with an attack. The immigration judge didn't just let that sit, but rather the trial attorney brought that out again at the hearing, asking the asylum officer, what did you think of her testimony? And again, he repeated, totally illogical. Well, but that's not the problem, right? I mean, as I understand it, it's not that the INS trial lawyer wasn't to have access to this. It's that the – the I.J. wasn't to be influenced by it, right? I mean, I assume the I.J. trial lawyer, for preparation, could look over this assessment and ask questions regarding the same credibility issues that the asylum officer perceived. That's not the problem. Right. And that is exactly what should have happened. The asylum officer could have brought out, well, did you mention this incident? Did you mention this other incident? Why not? But rather than do that, the trial attorney introduced the negative credibility finding and then brought out and hammered home again this negative credibility inference of the asylum officer. I note that the immigration judge also took that, and I think ran with it. He specifically asked questions regarding the asylum officer's credibility termination. Have you ever heard of this happening? Did the – did the INS lawyer specifically refer to the assessment by saying you said X in your assessment, or just covered the same ground? I think that the INS attorney simply covered the same ground. That asked – that is, she asked why did you refer this case. I didn't deem her credible. What did you think of the testimony? It was, quote, totally illogical and inconsistent. Again, I think it's a particularly hostile evaluation because that was about her correction of describing when she was kicked in the stomach and had trouble getting birth, happening in 1992, when the asylum officer said, wait a second, I thought your son was born – I think I just confused it – happening in 1994, and then when the asylum officer asked, wait a second, I thought your son was born in 1992, she corrected herself, said, oh, yes, that's right, it happened in 1992, not 1994. Now, to label that totally illogical, I think, shows the bias and the prejudicial effect of introducing that statement, the assessment to refer, before the immigration judge, and, moreover, that's compounded when it's brought again before the immigration judge. And this is an immigration judge who, although he might have said, I'm not going to look at the credibility issue, could have eliminated that by simply striking that second page. All of those statements could have been brought in. There's no reason to introduce that credibility determination in violation of national immigration court policy. Well, striking it meaning it was all – it was introduced in error. I mean, the – apparently there was a memo at the time that said you absolutely can't do this, and it was done. So if he just said, I'm striking it and giving it back, that would have been the end of it? I think then you would have at least had that out of the record. That would have been the first thing the judge would have done, is strike that credibility, not admit that credibility determination, strike that. Secondly, cut off questioning as to what the asylum officer's credibility determination was at the hearing. We know that it's a de novo hearing, that the immigration judge is supposed to make the credibility determination. It's simply not relevant what the asylum officer's individual credibility assessment of that person is. The judge is in the position to make that, as the judge recognized in his order. And I think the prejudice also goes to the fact that this wouldn't have otherwise come up. This evidence would not have been admitted. This line of questioning would not have gone in, have been investigated. Rather, the question would have been, why did you not include this detail in your report that could have evaluated independent of the asylum officer's credibility determination? And certainly, they could have, and often do, put the asylum officer on to say, you know, to go over their notes and say what she said at the asylum area. And it would have been appropriate to have, to bring the asylum officer on to, for example, impeach Ms. Kozlova were she to have said something that the asylum officer didn't think happened at the hearing. What we're emphasizing here is that it's particularly prejudicial to introduce the credibility assessment and bring that into play. And I think that under Bridges and matter of Garcia-Flores, the law is clear, is that if there's possible prejudice, if it's possibly a prejudiced Petitioner, and there is a violation of procedures that are in place to protect her interests, that is, to not color the proceedings with an adverse credibility determination that really isn't relevant, then there's a denial of a right to a fair hearing, and this should be remanded for that purpose. Didn't the immigration judge say that he was going to consider credibility de novo? The immigration judge did say that, but I don't think that that alone can insulate the decision. How can we go behind that statement? What evidence is there that he did not, or she did not? I think that the questioning of the immigration judge, specifically to the asylum officer, about his opinion of credibility. That is, have you ever heard of a Petitioner saying, my lawyer told me not to include this incident? No. I think that that shows that the credibility of the asylum officer was directly in play in this hearing. This issue is not discussed in the BIA's opinion, is it? The precise legal argument that the national immigration policy does not allow the admission of the credibility determination is not raised in the BIA brief, but we think that it's still clearly exhausted because counsel for Petitioner argued both in the notice to appeal and before the BIA, and before the IJ, that this document should not be admitted, should be stricken. And in the notice of appeal to the BIA, he referred to the bias that admission of these documents, or referred to the bias of both the asylum officer and the immigration judge. Really, the exhaustion law of this circuit, and as required by the statute, says that we need to present the issue for the BIA to rule, should this have been admitted or not. We can use different wrapping paper. We can make different arguments around why it should or should not be admitted, but the issue is raised. But this document was mentioned before the BIA in the brief to the BIA. So the assessment to refer, which is the credibility determination, was specifically mentioned. That was what was the substance of the motion to strike. Not, for example, the newspaper article, which was also part of the motion to strike. The newspaper article was not really in dispute. It was the assessment to refer and bringing the asylum officer into the hearing that was of concern. At this point, I'd like to reserve the remaining minute for rebuttal. Thank you. Certainly. Ms. Nagel. May it please the court. My name is Catherine Nagel, and I'm a Rule 27 student representing the United States government in this matter. This is a case where an immigrant has applied for asylum after overstaying a visitor's visa, relied on her own testimony in support of that claim, and was found not to have met her burden of proof because she was not credible. Now, the Petitioners have brought a variety of specific challenges to the adverse credibility determination in this case. But it really is the underlying issue in this case, whether she was credible. So I'd like to spend the time before this Court today showing the Court how the substantial evidence is in the record that would allow this Court to affirm. What about the issue that we've been discussing? Was that exhausted? I.e., there was a firm policy at the time that this document was not to be admitted under any circumstances ever. Right. It was admitted. I.J. said he wasn't influenced by it, but that's not what the rule says or the internal policy says. It says don't admit it under any circumstances. Was this, A, was it exhausted? B, do you think that there caused that violation of that policy as a basis for reversing an I.J. decision? The issue is not exhausted, Your Honor. The three documents which this Court should look at to determine the exhaustion issue are the notice of appeal, the Petitioner's brief to the BIA, and then the BIA's opinion itself. Excuse me. Before you continue answering, just could you tell me what issue you're talking about? I'm talking about the challenge to the adverse credibility or, I'm sorry, challenge to the admission of the credibility determination into the record. Actually, as a preliminary point, I'd like to address the opposing counsel's comment that the adverse credibility determination itself was the issue in any of those documents. The issue was purely the pre-hearing statement as a whole, that pleading was admitted late. That was the issue. If I understand, Judge Gershwin. Well, that's what I'm trying to clarify. I'm sure you're answering the question that was asked, which I think is kind of ambiguous, because the BIA itself certainly addressed the interpretation of the regulation issue. The late statement regulation? Correct. So so I'm not quite sure what the question is. I mean, it's just no issue that that was exhausted. Well, the BIA addressed the late filing question, but it didn't address, as I understand it, the contention that this particular kind of document under no circumstances should be admitted into the record. That's correct, Your Honor. And that is, yeah, I misspoke in terms of how that affects the adverse credibility determination. The challenge is to that document being admitted into evidence, and it includes the assessment and the credibility determination, which is what the policy is about. In the brief to the BIA, as I mentioned, the assessment, the credibility determination was not argued specifically. It was about the pleading as a whole. The other point that I'd like to make about the exhaustion argument is that Petitioner's attorney at this stage of the proceedings, Mr. Kowalski, was well aware of the adverse credibility finding. And we can look to the record at page 67 of the record. It's a transcript of the initial appearance before the immigration judge. What we see is that Mr. Kowalski brought up the issue of the adverse credibility finding. And I invite the Court to follow along. This was not, this statement of facts was not in the brief. But wait a minute, why does that matter? It matters, Your Honor, because what Mr. Kowalski said was, there is an adverse credibility issue in this case. And if the government is going to enter this assessment, this very document that was against the policy, if the government's going to enter that in, we want to cross-examine the asylum officer. So it was the Petitioner's attorney who brought this up. He decided to approach the credibility issue head on. And the remedy that he desired was to simply cross-examine the asylum officer. That at no point, not at that initial hearing, at no stage after did he object to the assessment being included under the policy. And again, not in any of the appeals to the BIA as well. So what we see is that this was a strategy matter that Mr. Kowalski took that approach to sort of preempt the credibility issue from the very beginning through cross-examination. Also, the underlying policy in this, the memorandum, has never been held to have the force of law, just as another matter. Petitioners bring this as a due process claim, but this is not a situation that evokes due process. In other civil contexts, prior administrative findings by officers are admissible under ER 8038. So even though the agency has chosen to limit the evidence that may be admitted, this is not a constitutional matter. What we have overall in this case is a situation where a petitioner was given three opportunities to present evidence on her asylum claim. In the asylum application, to the asylum officer, and to the immigration judge. At each of these stages, she relied on her own testimony to make that claim. And at each stage, her stories got bigger, more violent, and more unbelievable. In her asylum application, petitioner listed events, alleged events of persecution that included losing jobs, being excluded from schools, bullying of her children, such things. And then by the time she reached the evidentiary hearing, she had added five more incidents of extremely violent, life-threatening persecution to her account, her asylum account. She explained her failure to include those five incidents by saying that her attorney had affirmatively instructed her not to include those incidents in her affidavit. Based on this just very basic summary of the facts, the credibility problems with Ms. Kozlova's testimony are fairly plain on their face. As the immigration judge stated in his oral decision, when one omits significant information such as this from the original application and adds it later, the normal inference to be drawn is that it is an embellishment. In this circuit, an adverse credibility ruling will be upheld so long as identified inconsistencies go to the heart of the claim. And we see that because these additional incidents are so extreme, are so violent, and the explanations for them are so implausible, that the ad – that there is substantial evidence to affirm this adverse credibility determination. So I have a question about this. Do you think this issue was the foster? The underlying substantial evidence? No, Your Honor, because the – because the issue brought before the BIA was so specific, the adverse credibility challenge there was limited exclusively to the question of whether an adverse credibility finding could coexist with a finding of good moral character. That was the only issue. And I would again point to those three documents, the notice of appeal, the appeal brief to the BIA, and the BIA's opinion itself. And that gets to my point. The BIA, in its opinion, when it addressed the question of the adverse credibility, it said the only challenge brought to this adverse credibility determination is this good moral character versus adverse credibility issue. It addressed that issue and said that Petitioner had suggested no other ways that the adverse credibility determination might have any errors, and so it disposed of that issue. The other distinction between the issue that the Court addressed and the issues that the Petitioners are now bringing is, of course, that the distinction made then between this adverse credibility and good moral character, this is a very theoretical legal distinction that the attorneys were making. Now they are really getting into the details of how the hearing was conducted, the questions that the immigration judge allegedly should have asked, et cetera. I'd like to very briefly address the question of Mr. Daniloff, the Petitioner's attorney, when she was writing her application, and the her – excuse me – the argument that because he has since been disbarred that this is somehow relevant to this case. My first point is that Petitioners were given the opportunity at this hearing to call Mr. Daniloff or anyone from his office to testify as to what happened. There is – it is clear that she did not do that. Two weeks to continue. And second of all, if they still needed an opportunity to present evidence on this issue, there is always the ineffective assistance of counsel claim, which is the in her account. Is there no further questions, thank you? I think not. Thank you very much. Mr. Straughan. Briefly, Roboto, Your Honors. I think under this Court's case law in Aragon, I own that Petitioners have exhausted the issues. Again, they need – the BIA needs to have had the opportunity to address the issue. It doesn't matter precisely if the exact same legal argument was made. Here, the Petitioner moved to strike the credibility assessment and the officer notes. But it's really a very specific question. I mean, it is so specific that if – where do you think was it exhausted? Could we have reached it in the first instance? Or would we have reached it in the first instance? The only case I know that's similar to this is the Alcazar case, in which we didn't raise it in the first instance. We sent it back to the BIA because the impact of an internal policy is something that the agency should address in the first instance. Well, and I think there is an equal protection issue to remand back that was exhausted because it couldn't have been raised. Because this – this more recent BIA decision implementing this national policy not to admit the document was only issued – a decision on that was only issued, I think it was in 2005, and couldn't have been raised to the Board of Immigration Appeals. But I think Aragon, I own, is on point. There, a legal argument was made, a statutory argument, that a crime was not an aggravated felony. And before the Ninth Circuit, a completely distinct statutory argument was made that the crime was not an aggravated felony. So the Board didn't have an opportunity to consider that precise legal argument, you know, the precise legal argument about why something should be stricken, why something is an aggravated felony. But what was important is the agency had a chance to say, yes, this is an aggravated felony, yes, this should be admitted, yes, the credibility of termination is acceptable, and Petitioners have fulfilled that. Thank you. Okay. Thank you, Mr. Strong. I just want to say both arguments were very helpful, and we appreciate it. But particularly because Ms. Nagle is a student, I just want to say, based on the quality of the argument, you'll be welcome to borrow this Court at any time. Thank you for your service to the Court in taking on the project. And we appreciate, as I say, the argument by both counsel. The matter just argued will be submitted.
judges: Alarcon, Rymer, Berzon